We have, I think, five arguments this morning. We're going to begin with a bail motion and then after that we have four merits cases that will be argued. For the bail motion, let me get the councilors all here, Mr. Larson and Mr. Schaefer. Yes, your honor. Yes, your honor. All right, so for this one it'll be a little different than the way we do it for the others just because there's a lot of slides, but let me tell you how we've been doing it in the past. Basically, we allow council to sort of go for a few minutes before the judges ask questions. We'll take the judges pretty much in order. I'll ask each of my colleagues if they have any questions. If they do, then they'll ask them and you'll answer them and then I'll go last if I have any questions after they've gone and so I'll ask the judges just to identify themselves when they speak just so you know who's who and the deputy will let you know sort of when you get close to your time. She'll, I think, give you a notice when you have a minute to go both for the initial phase and then for the total lot. All right, we'll have slightly different running rules for the merits cases and I'll explain those in a minute, but that's how we'll do this bail motion. All right, so Mr. Larson, you have the floor. Thank you, your honors, and good morning. This is Matt Larson of the Federal Defenders for Mr. Bryant. Please chime in if you can't hear me. This is the first time I'm doing it this way. Your honors, district court denied bail on the ground that a reversal on appeal of its ruling on the First Step Act would not be a reversal within the meaning of the Bail Reform Act because it would not compel the cater of Mr. Bryant's conviction or mandate a lower sentence. Your honors, I respectfully disagree with that view, but I do agree that Mr. Bryant's bail motion depends on both the reversal prong of the Bail Act as well as the prong at 3143B1B4, the prong that concerns a reduced sentence that will likely run before the appeal is decided. Now, although this court does have the power to address that prong in the first instance, I also agree with the government that the district court is in the best position to make that judgment in the first instance. Although the district court said in her April 2nd ruling on bail that a further sentence reduction was not likely, the facts have changed materially and dramatically since then. Now, your honors, all BOP facilities are on 24-hour lockdown. At the MDC in particular, where Mr. Bryant is incarcerated, inmates are kept in their cells for 24 hours a day, but for a 30-minute release three times a week, thus totaling 90 minutes a week in which they're not in their cells. They have that time to shower if they can or to use the phone. Now, your honors, not only are those much harsher conditions of confinement than the district court envisioned when she sentenced Mr. Bryant on March 11th, but moreover, there's now something that materially thwarts a purpose of the sentencing imposed on March 11th. When the judge did impose a reduced sentence, she said the point of giving Mr. Bryant a little more time in jail was to allow him to continue to prepare to reenter society. That's on page 30 of the March 11th transcript. But now, your honors, there's no such opportunity. Being locked in his cell for 24 hours a day precludes any possibility of meaningfully preparing for reentry. And of course, as the court is well aware, not only is Mr. Bryant locked in his cell, but he's locked- You have one more minute. Thank you. But he's locked in a facility that has a confirmed presence of the coronavirus, which poses a relatively heightened risk of seriously injuring or killing Mr. Bryant. Your honors, my point is this. Given all of the facts that have changed materially since April 2nd, I do agree with the government that the district court is in the best position to make a judgment on this in the first instance. All right. Thank you. Judge Winter, do you have any questions for Mr. Larson? No, I don't. Thank you. And Judge Wesley, do you have any questions for Mr. Larson? No, I don't. Thank you, Bill. Thank you, Mr. Larson. Thank you. All right. I don't think I do either. Thank you, Mr. Larson. We'll now hear from Mr. Schaffer on behalf of the government. Thank you, your honor. May it please the court. My name is Jared Schaffer, and I represent the United States of America on appeal in this matter. Mr. Bryant is not awaiting trial or sentencing. He is serving a valid sentence for a valid conviction, neither of which are at issue on appeal. Mr. Bryant challenges only a discretionary reduction that reduced his original non-guideline sentence far below even the guidelines range he urges on appeal. Section 3143 was not intended to permit release when success on appeal does not preclude continued incarceration. And the district judge who originally sentenced Mr. Bryant recently reduced his sentence and subsequently denied his motion for bail pending appeal made clear that even remand from this court would not suggest a necessary or likely imposition of a further reduced sentence. Like the district court, this court should deny Mr. Bryant's motion for bail pending appeal. First, because even a favorable result on appeal would not entitle Mr. Bryant to release. His appeal is not likely to result in reversal within the meaning of section 3143. Mr. Bryant does not cite a single case in which bail was granted for an appellate challenging a purported resentencing error like that at issue here, and for good reason. This court's cases in the legislative history of section 3143 make clear that it was intended to authorize bail where the would complete his sentence during his appeal. That is not the case here. Moreover, this court does not typically reverse guideline calculation errors. Instead, it vacates the sentence and remands for resentencing. And it's not just a technical distinction. It reflects the fact that such errors are not sufficient to grant bail to appellants under section 3143 under these conditions. And there's no question here that even were Mr. Bryant successful on appeal, he has not served his term of incarceration to which he was sentenced. And even with respect to his reduced sentence, the BOP currently projects a release date in 2022. Second, Judge Swain's decision denying the defendant's motion for bail combined with the record of the March 11th proceeding make clear that Mr. Bryant is not likely to receive a reduced sentence less than the total of the time he served, plus the expected duration of this appeal. Mr. Bryant never presented that argument below and it's waived. To the extent the court wishes to consider it, the government would urge the court to follow the procedure it did in Hochevar and remand to the district court. But that's not necessary here because Mr. Bryant does not satisfy the other requirements of section 3143. And third, Mr. Bryant's appeal does not raise a His argument regarding section 401 and that it applies retroactively in this case contravenes the plain text of the First Step Act has been rejected by every court to consider it in the sentencing reduction context and has been rejected by at least five circuit courts on direct appeal. And lastly, there are no exceptional circumstances within the meaning of section 3145C that justify release here. While Mr. Bryant's concerns regarding COVID-19 are certainly understandable, Judge Swain considered those concerns when raised by my friend at the March 11th proceeding and determined that COVID-19 did not justify a further reduction in sentence. With that, I would be happy to answer any questions that the court may have. All right. Thank you, Mr. Schaefer. Judge Winter, do you have any questions for Mr. Schaefer? No, I don't. Thank you. And Judge Wesley, do you have any questions for Mr. Schaefer? Yeah, I do. I do. Mr. Schaefer, would you say that the conditions that were Mr. Bryant's being held has significantly changed from the time of his sentencing? At the time of the sentencing, Your Honor, there were a significantly lower number of COVID-19 cases. I think that the BOP has since that time taken some aggressive steps in order to prevent further exposure to COVID-19. Do those steps also include releasing individuals who are close to their release date and or because of their age or infirmity? It has included those, Your Honor. That's not comparable to the situation here, however. No, I understand it. I understand it. You would agree with me that life is a bit different today than it was on April 2nd, wouldn't you? I'm talking to you from my apartment looking out on the field. Normally, I would be with my colleagues in New York or with Judge Winter coming in remotely from Connecticut, but the world is a bit different right now, isn't it? The world is a bit different right now, Your Honor. And in response to that, the BOP has taken aggressive steps to try and protect inmates. I certainly agree that there are different considerations that have arisen and that there are unique considerations that context. But here, Mr. Bryan is challenging on appeal and discretionary. I'm aware of it. I'm aware of his substantive points. Just one last thing. At the time that he was sentenced, refresh my recollection for me. At the time that he was resentenced by Judge Swain, how much time was he originally sentenced to and then how much time did she give him? What was the old sentence and what was the new sentence? The original sentence was 300 months. Judge Swain reduced that to 216 months. 216? And you say his release date is 2022? Yes, Your Honor. That's what the BOP currently projects. Okay. All right. And that was within the recalculated guidelines? No. The sentence that Judge Swain imposed was far below the recalculated guidelines. You're right. Okay. I just don't want to mix these up. Thank you very much. Thank you. All right. Thank you, Mr. Shaffer. I have no further questions. So we'll reserve decision on this motion.